REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 494

September Term, 2014

---

EFRAIN TAYLOR

v.

STATE OF MARYLAND

---

Eyler, Deborah S.
Zarnoch,
Nazarian,

JJ.

---

Opinion by Zarnoch, J.

---

Filed:  August 27, 2015

Appellant Efrain Taylor claims that police officers violated his Fourth Amendment rights when, after his arrest for driving under the influence of alcohol (DUI), they searched his vehicle for containers of alcohol and instead, found illegal narcotics. For the reasons set forth below, we affirm the ruling of the Circuit Court for Dorchester County that the search of his vehicle incident to his DUI arrest was constitutional. However, we also hold that the court incorrectly gave Taylor an enhanced sentence. Accordingly, we remand for resentencing.

## FACTS AND PROCEEDINGS[1]

Taylor was charged with possession with intent to distribute Controlled Dangerous Substance (CDS), Md. Code (2002, 2012 Repl. Vol., 2014 Supp.), Criminal Law Article ("CL") § 5-602; possession of CDS, CL § 5-601; failure to stop at a lawful stop sign, Md. Code (1977, Repl. Vol. 2012, 2014 Supp.), Transportation Article (TR) § 21-707; driving in excess of a reasonable and prudent speed, TR § 21-801; driving under the influence, TR § 21-902(a); and driving while impaired, TR § 21-902(b). Prior to trial, Taylor filed a motion to suppress evidence.

### a. Facts presented at suppression hearing

Around 1:00 a.m. on March 1, 2013, Patrolman Chad Mothersell was on patrol in Cambridge. As he later testified, he "observed a SUV vehicle traveling southbound on

---

[1] This case comes to us as a challenge to a motion to suppress and to sentencing. Taylor's brief, however, incorporates certain facts that were presented only at the trial, and were not actually before the motions court. For purposes of context only, we have set forth the trial facts and have organized them as they were presented at their respective proceedings.

1

Phillips [Street] at what appeared to be a high rate of speed," which he estimated to be about 45 miles per hour in a 25 mile per hour zone. His conclusion was based on his "training and experience" in determining the speed of vehicles. Mothersell followed the vehicle and soon after, noticed that it failed to stop at a stop sign while making a left turn on to Bradley Street. Mothersell turned on his emergency lights, the SUV stopped, and he pulled up behind it.

Mothersell approached the vehicle, in which Taylor was the only occupant, and asked him for his driver's license. He stated that "[a]fter making contact with [Taylor,] I detected a minor odor of alcohol beverage from his breath and person." He observed that Taylor's "speech was slurred, hard to understand at certain times. His eyes were bloodshot and glassy." Mothersell asked Taylor where he was before he started driving. Taylor replied that he had been at the Point Break Beach Bar in Cambridge.

At that point, Mothersell asked Taylor to step out of the vehicle so that the officer could administer "standardized field sobriety tests: the horizontal gaze nystagmus, the nine-step walk-and-turn and the one-legged stand."[2] Mothersell "determined that these weren't done successfully."

Mothersell placed Taylor under arrest for suspicion of DUI. By that time, Mothersell's back-up officer, Officer Carroll, arrived at the scene and conducted a search

---

[2] *See* National Highway Traffic Safety Administration, "Standardized Field Sobriety Testing," available at http://www.nhtsa.gov/people/injury/alcohol/sfst/appendix_a.htm *last accessed* 6/9/2015 [http://perma.cc/SA5C-PBNX].

of the vehicle, while Mothersell read Taylor his DR-15 Advice of Rights.[3] At this time, Carroll reported back to Mothersell that he had found some "controlled dangerous substance" in the vehicle inside the center console, which Carroll had opened. Mothersell then went to the vehicle and he "observed a clear plastic baggy containing several knotted bags of what [he] suspected to be powder cocaine."

Mothersell explained at the suppression hearing that the purpose of a "search of a vehicle is to locate any other alcohol, open containers, anything pertaining to the DUI arrest." Taylor's attorney then asked:

> Q: Were you able to make observations of the interior passenger compartment of the car in general?
>
> A: Yes.
>
> Q: And you described the lighting outside while all this is occurring? Obviously it's the middle of the night.
>
> A: Middle of the night, it might be a couple of street lights, illuminated with my spotlight, take-down lights, my own flashlight. . . .
>
> Q: Did you have any reason to believe that there were any such open containers in the vehicle?
>
> A: A good possibility, yes. I've had several DUI arrests where there's plenty of open containers left in the vehicle. And I want to make sure there's no other alcohol in the vehicle for the probable cause for my DUI stop.

---

[3] TR § 16-205.1(b)(2) requires an "arresting officer to advise the detainee of the possible administrative sanctions for a refusal to take the breath test and for test results that show blood alcohol concentration above certain levels." *Motor Vehicle Admin. v. Deering*, 438 Md. 611, 617 (2014); *see Advice of Rights, available at* http://www.mva. maryland.gov/_resources/docs/DR-015.pdf [http://perma.cc/YLU7-FG67].

Q:      But on this particular case, you had had an opportunity to approach the vehicle on the passenger's side, look inside the vehicle, and see what was going on; is that right?

[State's Attorney]:   Objection.

The Court:      What's your objection?

[State's Attorney]:   Your honor, he already answered the question.

The Court:      Well, it is asked and answered.  Go ahead.

A:      At that point I didn't observe anything during my initial contact with him, my concern was also more directed to him, himself.

Taylor's counsel later argued that Mothersell lacked "independent probable cause" for the search, because "[t]here was [sic] no observed potential open containers.  There was no odor of alcohol identified by the law-enforcement officer emanating from the vehicle itself as opposed to Mr. Taylor."

After considering this argument, the court denied his motion, stating:

[O]n a stop for speed, a subsequent odor of alcohol, glassy eyes, and failure of field sobriety tests, the search of the vehicle incident to the arrest under those circumstances could have revealed a pint of whiskey in the glove compartment, who's to say.  So I feel the search was lawful as well.  So the motion is denied.

**b.      Facts presented at trial**

At trial on March 13, 2014, Officer Carroll testified that as Mothersell was reading Taylor his DR-15 Advice of Rights, Carroll approached the two and explained that he had "located some controlled dangerous substance."  Carroll later explained that during his search, he noticed the vehicle's center console was closed, but not "fully latched down," as a piece of paper stuck out of it.  He opened the console and observed a bag containing seventy-six smaller baggies of what was later tested to be 34.3 grams of cocaine

4

hydrochloride (powder cocaine). Mothersell then approached the driver's side of the SUV, looked inside the cabin, observed the bags on the driver's seat, and seized them. Later, at the stationhouse, Mothersell searched Taylor's person and discovered $1,045 in cash in his pocket and wallet.

Taylor testified that on the night of the arrest, he had drunk one twelve-ounce can of Bud Ice at the Point Break Beach Bar. He stated that he was on his way home at the time of arrest and "he did not own the SUV and that instead[,] another man, Leroy Roberts, owned it." Taylor said he had borrowed the SUV to travel somewhere the following day, and that the morning of the arrest was the first time he had entered the vehicle, so he was ignorant of the contraband inside. As to the cash, Taylor said he was purchasing and investing in tax liens, and that he had been paid the balance of one lien that evening. He said that he had another check from one of those liens on the night of the arrest and tried to show it to Mothersell, who said "it wasn't necessary."

Taylor also tried to explain his sobriety test failures. He stated that he wore contact lenses and told this to the officer. He explained that he failed the one-legged stand test because of a past fracture in the tested foot. However, Taylor claimed he had passed the "step test" as instructed. He stated that he was not under the influence of alcohol on the night he was arrested. The record does not indicate that Taylor provided any corroboration of his claims regarding the tax liens or his medical ailments.

At trial, a jury acquitted Taylor of driving at an unreasonable speed, but convicted him of all other charges. On July 7, 2014, the court then sentenced Taylor as a subsequent offender. He received a sentence of forty years of incarceration, with twenty years

5

suspended, for the possession with intent to distribute charge, to be served consecutively to a sentence from a prior conviction. He was also sentenced to one year of incarceration for driving or attempting to drive a vehicle under the influence of alcohol, to be served concurrently with the possession with intent to distribute sentence.

## QUESTIONS PRESENTED

Taylor presents the following questions, which we have rephrased:[4]

1. Did the circuit court err in denying his motion to suppress the narcotics found in his vehicle?

2. Was he properly sentenced as a second-time offender?

## DISCUSSION

### I.      Standard of Review

We review a denial of a motion to suppress evidence seized pursuant to a warrantless search based on the record of the suppression hearing, not the subsequent trial. *State v. Nieves*, 383 Md. 573, 581 (2004). We consider the evidence in the light most favorable to the prevailing party, here, the State. *Gorman v. State*, 168 Md. App. 412, 421 (2006) (Quotation omitted). We also "accept the suppression court's first-level factual findings

---

[4] Taylor asked:

1. Did the court err in denying Mr. Taylor's suppression motion when officers searched the vehicle in which he was driving in violation of *Arizona v. Gant*, 556 U.S. 332 (2009)?

2. Can Mr. Taylor be sentenced according to a second-time offender enhancement, subjecting him to a minimum mandatory 10 years of incarceration without the possibility of parole, when he was never convicted of a first qualifying offense?

unless clearly erroneous, and give due regard to the court's opportunity to assess the credibility of witnesses." *Id.* "We exercise plenary review of the suppression court's conclusions of law," and "make our own constitutional appraisal as to whether an action taken was proper, by reviewing the law and applying it to the facts of the case." *Id.* "Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, *what is reasonable depends on the context within which a search takes place.*" *State v. Alexander*, 124 Md. App. 258, 265 (1998) (Emphasis added in *Alexander*) (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 337 (1985)). On that issue, "the ultimate questions of reasonable suspicion and probable cause to make a warrantless search should be reviewed de novo." *Ferris v. State*, 355 Md. 356, 385 (1999) (quoting *Ornelas v. United States*, 517 U.S. 690, 691 (1996)).

## II. Search Incident to a DUI Arrest

### a. The Search Incident to Arrest Standard

Taylor has challenged the legality of his search under the Fourth Amendment to the United States Constitution,[5] which prohibits warrantless searches and seizures of a citizen's "persons, houses, papers, and effects." One of a number of exceptions to this rule is that an officer may, in certain circumstances, conduct a "search incident to an arrest." *New York v. Belton*, 453 U.S. 454, 459 (1981).

Police may search an automobile incident to arrest of its driver or passenger for two reasons. First, officers may "search a vehicle incident to a recent occupant's arrest only

---

[5] Taylor did not argue that the search violated the Maryland Declaration of Rights.

7

when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Arizona v. Gant*, 556 U.S. 332, 343 (2009). No one suggests that this exception applies. Second, officers may also search incident to a lawful arrest when it is "*reasonable to believe* evidence relevant to the crime of arrest might be found in the vehicle." *Id.* (Emphasis added) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)).[6] Absent either of these circumstances, a search of the vehicle would be unreasonable.

### b. "Reasonable to believe"

Under what circumstances is it reasonable to believe that evidence of the offense of arrest will be in the vehicle? The Supreme Court did not explain what quantum of suspicion this standard would require. Is it a preponderance of the evidence, probable cause, or the reasonable suspicion for a stop-and-frisk under *Terry v. Ohio*, 392 U.S. 1, 21 (1968)?

---

[6] In *Scribner v. State*, 219 Md. App. 91 (2014), we applied the second *Gant* exception to uphold the search of a motor vehicle after the appellant was arrested for second degree assault and found to be in possession of crack cocaine. We noted:

> The appellant was arrested standing next to the Solara, in which he recently had been riding and that he was trying to enter. Under the circumstances, the arresting officers reasonably could have believed that the Solara contained evidence of the cocaine possession offense the appellant was under arrest for. Under *Gant*, this was sufficient to justify a warrantless search of the Solara. It was not necessary for the warrantless search of the Solara. It was not necessary for the State also to show that the appellant was within reaching distance of the passenger's compartment of the Solara when the search was conducted.

*Id.* at 102.

8

Courts that have considered this issue have held that "[p]resumably, the 'reasonable to believe' standard requires less than probable cause, because otherwise *Gant*'s evidentiary rationale would merely duplicate the 'automobile exception,' which the Court specifically identified as a distinct exception to the warrant requirement." *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) (citing *Gant*, 556 U.S. at 347)). Because the automobile exception "allows searches for evidence relevant to offenses *other than the offense of arrest*, and the scope of the search authorized is broader," an officer must have a greater level of suspicion, *i.e.* "probable cause to believe a vehicle contains evidence of criminal activity." *Gant*, 556 U.S. at 347 (Emphasis added) (citing *United States v. Ross*, 456 U.S. 798, 820–21 (1982) (permitting searches of any area of the vehicle in which the evidence might be found). "Rather, the 'reasonable to believe' standard probably is akin to the "reasonable suspicion" standard required to justify a *Terry* search." *Vinton*, 594 F.3d at 25 (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)) (noting that a *Terry* search is permissible if the officer has reason to believe that the suspect is armed and dangerous).

"Accordingly, the officer's assessment of the likelihood that there will be relevant evidence inside the car must be based on more than 'a mere hunch,' but 'falls considerably short of [needing to] satisfy[ ] a preponderance of the evidence standard.'" *Id.* (quoting *United States v. Arvizu,* 534 U.S. 266, 74 (2002)); *see Quince v. State*, 319 Md. 430, 433 (1990) (Quotation omitted.)) ("[T]he level of suspicion for a *Terry* stop and frisk 'is considerably less than proof of wrongdoing by a preponderance of the evidence' . . . [and] 'the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause.'"); *accord Powell v. Com.*, 701 S.E.2d 831, 835 (Va. 2010).

9

Similarly, we hold that a *Gant*-like search of an automobile incident to arrest must be based on a similar level of reasonable suspicion as in an automobile stop under *Terry*. Therefore we look at the *Terry* line of cases for guidance here.

### c.     Factors establishing reasonable belief

Whether a belief is reasonable depends upon the totality of the circumstances, rather than a categorical rule. *See Arvizu*, 534 U.S. at 274 (Quotations omitted.) (noting that the "reasonable suspicion" standard is "somewhat abstract" and that the U.S. Supreme Court has "deliberately avoided reducing it to a neat set of legal rules"); *Graham v. State*, 325 Md. 398, 408 (1992) (Quotation omitted) ("[I]n evaluating the validity of a detention, we must examine 'the totality of the circumstances—the whole picture'"). As the Court of Appeals observed in *Graham*, where the officers "were immediately confronted with an array of facts which led them to reasonably suspect that Graham and Allen were engaged in some kind of criminal activity. . . . the subsequent arrest and seizure of property would not be tainted" and was not unconstitutional. *Id.* We believe relevant cases indicate that the following are appropriate considerations in developing a reason to believe evidence will be found in the vehicle: (1) a police officer's training and experience; (2) the lack of an innocent explanation for a driver's seemingly illicit behavior; and (3) the nature of the crime of arrest.

First, an officer may draw on his or her personal training and experience to develop a reasonable suspicion, or reason to believe, that a crime is afoot. Assessing the totality of the circumstances includes, *inter alia*, "allow[ing] officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative

information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273.

Second, an officer cannot, however, simply assert that "presumably innocent" behavior provides reason to believe evidence of the crime of arrest is in the vehicle. *See Ferris*, 355 Md. at 387. In *Ferris*, a driver was stopped for speeding at 1:06 a.m. and appeared to the arresting officer to have bloodshot eyes, but there was no odor of alcohol on his breath. *Id.* at 362-68. The officer concluded that the driver was not under the influence of alcohol, but some other CDS. The Court of Appeals held that the officer lacked reasonable suspicion to search the vehicle for evidence of intoxication. *Id.* at 384. The Court reasoned:

> The facts articulated by the trooper—that Ferris had exhibited extremely bloodshot eyes, nervousness, and a lack of odor of alcohol—are too weak, individually or in the aggregate, to justify reasonable suspicion of criminal activity. In the early morning hours, these factors could fit "a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure.

*Id.* at 387.

> In this case, the State presented no evidence that bloodshot eyes—or excessive speed—are indicative of persons under the influence of a controlled substance. In other words, Trooper Smith did not testify that Ferris's bloodshot eyes were somehow distinct from other bloodshot eyes irritated by non-criminal causes; nor did he explain how excessive speed, without any other driving irregularity, might imply a driver's impaired operation.

*Id.* at 392. Because the officer failed to explain why apparently innocent behavior—driving with bloodshot eyes, nervousness, and lack of an odor of alcohol—established reasonable suspicion of criminal activity, the search of the automobile was impermissible. *Id.* at 391-

11

92 ("The Fourth Amendment does not allow the law enforcement official to simply assert that apparently innocent conduct was suspicious to him or her; rather, the officer must offer 'the factual basis upon which he or she bases the conclusion.'"). Notably, nowhere in *Ferris* is there an indication that the officer ever explained how his training and experience led him to believe that the arrestee's behavior was consistent with illegal activity. Under those circumstances, the *Ferris* officer based his search not on a reasonable suspicion, but on a "mere hunch." *See Arvizu*, 534 U.S. at 274.

Third, certain offenses by their nature will involve evidence that an officer could reasonably believe is in a vehicle. A number of state courts to consider this issue have found that a DUI arrest provides reason to believe there will be containers of alcohol in the vehicle.

In *State v. Cantrell*, 233 P.3d 178 (Idaho Ct. App. 2010), the DUI arrestee challenged the search of his vehicle, stating that it was "not reasonable to believe that evidence of the offense of arrest, DUI, might be found in the vehicle based solely upon evidence of intoxication." *Id.* at 184. He argued that officers "must possess some additional information suggesting that evidence related to a DUI might be found in the vehicle," such as evidence "in plain view, or partially hidden, but visible to the officers." *Id.* However, the Court of Appeals of Idaho rejected this argument and held that no additional evidence was required once the arrestee was found to be intoxicated; the search incident to arrest for evidence of the DUI offense was "authorized irrespective of whether evidence is known to be located in the vehicle." *Id.* It was "reasonable to believe that evidence of the offense, e.g. alcohol containers or other evidence of alcohol use, 'might be

12

found in the vehicle.'" *Id.* at 185. Notably, the court explained, Cantrell's admission to consuming alcohol did not make it unreasonable for officers to still search for further evidence, as "officers are not required to accept as true a defendant's version of the events."

*Id.* Furthermore, the court rejected

> Cantrell's contention that a search of his vehicle is unreasonable because evidence of his DUI would only be contained in his body[, which] ignores the realities of a DUI investigation. Indeed, as the State points out, "a DUI trial does not start and end with a breathalyzer report," considering the fact that the report may be suppressed in some instances.

*Id.* (Citations omitted).

Other state courts have followed this rationale. On facts similar to this case, the Kansas Court of Appeals held that:

> [L]ike drug offenses, driving under the influence is likely within the category of crimes identified by the *Gant* Court as supplying a basis for searching a vehicle. . . .

> In addition to evidence that the car Ewertz was driving swerved in its lane and crossed over the fog line, that [the officer] smelled alcohol in the car after he pulled Ewertz over, that Ewertz failed field sobriety tests, that Ewertz had glassy and bloodshot eyes, and that Ewertz slurred her words, there is also evidence that Ewertz admitted to drinking at least one alcoholic beverage before driving the car. . . . [I]t was "reasonable to believe" evidence relevant to the crime of driving under the influence might be found in Ewertz' vehicle.

*State v. Ewertz*, 305 P.3d 23, 27-28 (Kan. App. 2013).

In *Cain v. State*, 2010 Ark. App. 30, 373 S.W.3d 392 (2010), the court affirmed a denial of a motion to suppress where the appellant passed two field-sobriety tests, but smelled of alcohol and did not pass the horizontal gaze nystagmus test. *Id.* at 394. After appellant was arrested for DWI, and the officers searched his car and found part of a

13

marijuana cigarette and a small amount of methamphetamine in a wallet on the passenger seat. *Id.*

In these three cases, the officer's suspicion that alcohol containers were in the vehicle flowed simply from the nature of the offense. Other courts, however, have upheld searches incident to DUI arrest only when there was some other indication that alcohol containers would be in the vehicle, such as a container of alcohol in plain view of the officer. *See United States v. Grote*, 629 F. Supp. 2d 1201, 1204 (E.D. Wash. 2009) ("From the exterior of the vehicle, Officer Moses was able to observe a brown paper bag wrapped around a bottle which was located next to the Defendant. Officer Moses testified that it appeared to be a bottle of alcohol since liquor stores typically put such bottles in brown paper bags"); *see United States v. Washington*, 670 F.3d 1321 (D.C. Cir. 2012) (holding that the smell of alcohol coming from the car and a visible small amount of red liquid in an open cup created an objectively reasonable belief that officers might find another container of alcohol in the car—i.e., the source of the liquid in the cup).

Absent these additional indicators that alcohol was being consumed in the vehicle, two courts have determined that a search incident to DUI arrest was unreasonable. In these cases, the courts proposed a hypothetical in which it would be presumptively unreasonable to believe a DUI arrestee had containers of alcohol in the vehicle. In *United States v. Reagan*, 713 F. Supp. 2d 724, 732 (E.D. Tenn. 2010), a federal court said:

> [A] police officer observes a patron drink several beers in an establishment in a short period of time. If the police officer then observes the patron leave the establishment, get into a vehicle in the parking lot, and drive off, the officer has probable cause to pursue the vehicle, effect a traffic stop, and arrest the driver for DUI.

14

The court believed that *Cantrell* and *Cain* implied a "*per se*" or categorical rule under which "DUI is an offense that, by its very nature, might yield physical evidence." *Id.* Under this rule, the court was concerned that an officer would have an unqualified reason to

> lawfully search the passenger compartment of the vehicle without a warrant even though he has absolutely no reason to believe that evidence of DUI is inside—to the contrary, his firsthand observation of the driver drinking several beers gives him a good reason to believe that no evidence of DUI is contained in the vehicle. This result seems completely contrary to *Gant*'s statement that a warrantless search of a vehicle's passenger compartment incident to arrest is lawful when "it is reasonable to believe the vehicle contains evidence of the offense of the arrest."

*Id.* at 733. The court held that the officer must have something more than prior experience of finding alcoholic beverage containers in a DUI arrestee's vehicle to justify a search of the vehicle:

> The Court acknowledges that a law enforcement officer's general prior experience is certainly *one* of the common sense factors to consider when deciding the reasonableness of his belief that evidence of a specific crime is located inside of a vehicle's passenger compartment. But in this case, the Court finds that Ranger Garner's *general prior experience alone* was not enough to establish a reasonable belief that evidence of DUI was contained within the Defendant's vehicle.

*Id.* at 733-34 (Emphasis added). The court in *dicta* suggested what it considered to be additional factors that might justify a search incident to arrest.

> Many different facts may provide a law enforcement officer with reason to believe that evidence of DUI is located inside the passenger compartment of a vehicle. Examples include observations of the driver drinking while driving, observations of an open container of alcohol in plain view inside the passenger compartment, statements made by the occupants of the vehicle indicating that an open container is in the passenger compartment, the smell of alcohol emanating from within the passenger compartment, or indications that the driver was traveling from a location such as a recreational area or

15

campground where alcohol is not available unless it is transported in by private vehicle.

*Id.* at 733 n.7.

The District of Columbia Court of Appeals, following the "not too far-fetched" hypothetical of *Reagan*, *id.* at 732, also held a search impermissible on substantially similar facts. *United States v. Taylor*, 49 A.3d 818, 827 n. 8 (D.C. 2012) ("If a police officer watched a man drunkenly stumble out of a bar, get into his vehicle, and start driving, and if the officer then immediately pulled that driver over, it would not be reasonable to conduct an evidentiary search of the vehicle under *Gant*."). The District of Columbia Court of Appeals considered the "totality of the circumstances" and found that they failed to amount to a reasonable belief that containers of alcohol would be in the automobile.

> To be sure, appellee claimed that he had consumed two beers at his sister's house two hours earlier. In light of his obvious intoxication at the time of arrest, there was an objectively reasonable inference that [appellee] was not being truthful about the timing and amount of his drinking. But that falsehood indicated only that he had been drinking much more recently or in much greater quantities than he had admitted. For example, it might have suggested that he had just left his sister's house, after drinking many more beers than two. Or that he had recently been drinking at a bar. It did not make it any more likely that he had been drinking in the vehicle.

*Id.* at 827.

Although we may not be able reconcile these divergent holdings, it is clear that (1) an officer's training and experience is an important, though not dispositive factor; (2) the lack of any innocent explanation for apparent intoxication in a vehicle may be grounds for reasonable suspicion; and (3) unless there are contrary indications, it is not unreasonable to think an intoxicated driver became intoxicated in the vehicle.

16

**d.      This Case**

All three of these factors support the suppression court's finding that it was reasonable for Mothersell to believe Taylor had alcoholic beverages in his vehicle that would be evidence of his DUI.

As a threshold issue, we note that the presence of wholly or partially-consumed alcoholic beverage containers in a vehicle, at least where the driver is the sole occupant, is circumstantial evidence of DUI.  Under TR § 21-902(a)(1), "[a] person may not drive or attempt to drive any vehicle while under the influence of alcohol."   Officers may investigate a DUI through a number of means, such as a chemical test incident to a lawful DUI arrest.  *See, e.g., United States v. Reid,* 929 F.2d 990, 994 (4th Cir. 1991).  Yet officers may also search for evidence of alcoholic containers to establish that the arrestee was under the influence, because in Maryland, a DUI offense may be proved by circumstantial evidence, namely, the presence of alcoholic beverages in the vehicle the arrestee had driven and in which he was found to be intoxicated.  *Owens v. State*, 93 Md. App. 162, 166-67 (1992).   As Judge Moylan explained, three "partially-consumed" beer cans were circumstantial evidence of DUI;

> At least a partial venue of the spree, moreover, would reasonably appear to have been the automobile.  One does not typically drink in the house and then carry the empties out to the car.  Some significant drinking, it may be inferred, had taken place while the appellant was in the car.

*Id.* at 167.  And in *White v. State*, 142 Md. App. 535 (2002), we found sufficient evidence of intoxication even though it "arose solely from the results of the field sobriety tests, the arresting officer's observations of appellant before and after her arrest, appellant's

17

admission that she had consumed one glass of vodka earlier that afternoon, and the discovery of a full bottle of whiskey in appellant's vehicle." *Id.* at 548.

We now turn to the relevant factors of this case. First, Mothersell clearly stated that in his experience, "I've had several DUI arrests where there's plenty of open containers left in the vehicle." Though not dispositive, this experience further establishes the reasonableness of the search. *See Reagan*, 713 F. Supp. 2d at 733-34 ("The Court acknowledges that a law enforcement officer's general prior experience is certainly one of the common sense factors to consider when deciding the reasonableness of his belief that evidence of a specific crime is located inside of a vehicle's passenger compartment.").

Second, there was no innocent explanation for Taylor's apparent intoxication. Unlike in *Ferris*, there was no "innocent" explanation for why Taylor or any other driver would be inebriated; any person may have bloodshot eyes while driving late at night, *see* 355 Md. at 387, but it is hard to construct a scenario in which a driver would smell of alcohol, have glassy eyes, and would fail sobriety tests lest they had consumed alcohol. It was clear Taylor had consumed alcohol sometime prior to the arrest; the remaining questions were where, when, and how much.

But during the suppression hearing, no evidence was presented of how much alcohol Taylor had consumed.[7] The first time Mothersell observed Taylor was when Taylor's SUV

---

[7] At trial, Taylor stated in his direct testimony that he had consumed one beer at a bar. Neither Mothersell nor Carroll ever testified to this fact, and in any event, no one made such a statement at the suppression hearing, and our review is confined to the record of that hearing.

passed him. After that, it became clear to Mothersell that Taylor was under the influence of alcohol, although there was no evidence as to where or when he came under the influence.[8] As part of his search for evidence of the DUI, Mothersell had to determine whether instruments of the offense, the intoxicants, were in Taylor's vehicle (the only place he knew Taylor had been) or somewhere else, about which Mothersell could only speculate. It was reasonable, in this scenario, to believe that Taylor had been drinking in the place where he was stopped.

The unknown timing surrounding the encounter further supports the reasonableness of Mothersell's belief. It is also a widely-recognized fact that the state of being under the influence of alcoholic beverages is not too temporally removed from the act of drinking the alcoholic beverages. As the U.S. Supreme Court has frequently noted, alcohol dissipates quickly in the body; this fact has long been accepted to justify compulsory blood testing under an "exigent circumstances" theory. *See Schmerber v. California*, 384 U.S. 757, 770-71 (1966) ("We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system."); *see also Missouri v. McNeely*, 133 S. Ct. 1552, 1560 (2013). It follows logically (and perhaps scientifically) that when alcohol is found or suspected to be in a person, it

---

[8] And, assuming *arguendo* that the suppression court had heard evidence that Taylor only drank one beer at the Point Break Beach Bar, this would further support Mothersell's suspicion that containers of alcohol were in the vehicle, assuming that most adult males do not become so inebriated as to be intoxicated after consuming one beer.

19

likely has not been there long. Taylor was apparently DUI in his vehicle; it was not unreasonable to believe, therefore, that he had recently consumed alcoholic beverages.

In addition, it was reasonable to search for additional evidence of inebriation even after Taylor failed the sobriety tests; as Mothersell explained, "I want[ed] to make sure there's no other alcohol in the vehicle for the probable cause for my DUI stop." That way, even if Taylor had successfully challenged a chemical test or the field sobriety tests, the presence of an alcoholic beverage container would have provided additional evidence to establish Taylor's guilt.

We further note that in Maryland, and particularly in Dorchester County, certain bars will allow their patrons to purchase alcoholic beverages on-site to consume elsewhere. *See* Md. Code (1957, 2011 Repl. Vol.), Article 2B § 6-401(k) (listing counties in which establishments may receive licenses for "consumption on premises or elsewhere"). It would not be unreasonable to conclude that a bar patron in Maryland might have left with an intoxicating package good and topped off the night's consumption on the drive. In sum, it was reasonable for Mothersell to conclude that Taylor's state of intoxication arose in his vehicle.

Taylor argues that by finding the search of his vehicle to be reasonable, we will usher in a law enforcement regime in which *any* arrest of a motorist would lead to a search of the vehicle. This fear is unjustified. Our holding is based on the totality of the circumstances here, namely: the officer's experience with inebriated motorists; the temporal nexus between alcohol consumption and inebriation; the fact that Mothersell never observed Taylor drinking in a bar; and the fact that the presence of open alcoholic

20

beverage containers in a vehicle is a means of proving DUI in Maryland.  Accordingly, Mothersell had reason to believe that Taylor would have alcoholic beverages in his vehicle and thus, the search was justified.

### III.    Legality of Sentence

Taylor also argues that he was improperly sentenced to ten years' incarceration without parole because the State did not offer proof of a predicate conviction to justify that enhancement.  Possession with intent to distribute, CL § 5-608, permits a 10 year mandatory minimum sentence when a defendant is convicted for a second qualifying narcotics offense.  CL § 608(b).  The statute applies this enhancement only to offenses enumerated in §§ 5-602 through 5-606, conspiracy to commit those offenses, or any other crime in the United States that would be a violation of those offenses.  CL § 5-608(b)(i) - (iii).  The State agrees with Taylor that it did not meet its burden of proving that Taylor had violated one of these offenses.  The only offense the State offered as proof was a violation of CL § 5-601, "CDS POSSESSION—NOT MARIHUANA."  As Taylor notes, and the State does not contest, simple possession of narcotics is not covered by CL § 5-608(b).

The parties disagree, however, as to what we should do.  Taylor requests that we vacate this portion of his sentence.  The State seeks a limited remand to hold a new sentencing hearing.  Md. Rule 8-604(a)(5) permits an appellate court to "remand the action to a lower court in accordance with section (d) of this Rule."  That section states that "[i]n a criminal case, if the appellate court reverses the judgment for error in the sentence or sentencing proceeding, the Court shall remand the case for resentencing."  Md. Rule

21

8-604(d). Further, an appellate court may, under Rule 4-345(a), "correct an illegal sentence at any time," whether the issue was raised during sentencing proceedings or not. *Bryant v. State*, 436 Md. 653, 660-62 (2014). A sentence is illegal when "the illegality inheres in the sentence itself. . .' *Id.* at 663 (Internal quotation marks omitted). In *Clark v. State*, 218 Md. App. 230 (2014), the circuit court "thought, incorrectly, that the appellant was subject to a mandatory minimum sentence of ten years without parole for his conviction under Count 8, and sentenced him accordingly. That sentence was contrary to law." *Id.* at 257-58. Accordingly, the court remanded for resentencing. *Id.* at 258

Similarly, we hold that the court incorrectly sentenced Taylor where the State did not establish a predicate conviction under CL § 5-608(b) to warrant the enhanced sentence. We therefore remand for resentencing.

**JUDGMENTS OF THE CIRCUIT COURT FOR DORCHESTER COUNTY AFFIRMED; CASE REMANDED FOR RESENTENCING CONSISTENT WITH THIS OPINION; COSTS TO BE EQUALLY DIVIDED BETWEEN APPELLANT AND DORCHESTER COUNTY.**