[Cite as *State v. Eversole*, 2017-Ohio-8436.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                       CASE NO. 15-17-03

      v.

SANDRA K. EVERSOLE,                    O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Van Wert County Common Pleas Court
Trial Court No. CR-16-07-072

**Judgment Reversed and Cause Remanded**

Date of Decision: November 6, 2017

APPEARANCES:

    *Blaise Katter* for Appellant

    *John Hatcher* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Sandra K. Eversole ("Eversole"), appeals the March 8, 2017 judgment entry of sentence of the Van Wert County Common Pleas Court. For the reasons that follow, we reverse.

{¶2} On May 14, 2016, Officer Adam F. Wehage ("Officer Wehage") of the Van Wert City Police Department initiated a traffic stop of the vehicle operated by Eversole after Officer Wehage observed Eversole commit a marked-lanes violation while travelling on Westwood Drive in Van Wert, Ohio. (Nov. 29, 2016 Tr. at 14, 17-18). Following field-sobriety tests, Eversole was arrested for operating a motor vehicle while under the influence of alcohol or drugs ("OVI"). (*Id.* at 20-24). Officer Wehage secured Eversole with handcuffs and placed her in the rear-passenger compartment of his patrol vehicle. (*Id.* at 24). While Eversole was handcuffed in the rear-passenger compartment of Officer Wehage's patrol vehicle, Officer Wehage searched Eversole's vehicle "for evidence of narcotics use" because he "believed she was under the influence of drugs or narcotics." (*Id.*). Officer Wehage found drugs and drug paraphernalia inside Eversole's purse. (*Id.* at 25).

{¶3} On July 8, 2016, the Van Wert County Grand Jury indicted Eversole on one count of possession of heroin in violation of R.C. 2925.11(A), (C)(6)(a), a fifth-degree felony, with an automobile-forfeiture specification. (Doc. No. 3).[1] Eversole

---

[1] Based on facts contained in the record, Eversole was convicted of OVI in a separate case that is not part of the record in this case.

appeared for arraignment on October 24, 2016 and entered a plea of not guilty. (Doc. No. 13).

{¶4} On November 1, 2016, Eversole filed a motion to suppress evidence. (Doc. No. 17). Specifically, Eversole requested that the heroin found from the search of her vehicle be suppressed. (*Id.*). In her motion to suppress, Eversole argued that it was unreasonable for Officer Wehage to search her vehicle incident to her arrest for OVI for evidence of that offense based on *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710 (2009). (*Id.*).[2] In *Gant*, the Supreme Court of the United States determined that "[p]olice may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest." *Gant* at syllabus. The trial court held a hearing on Eversole's motion to suppress evidence on November 29, 2016. (Nov. 29, 2016 Tr. at 12); (Doc. No. 30). The State filed its memorandum in opposition to Eversole's motion to suppress evidence on December 12, 2016. (Doc. No. 27). On December 22, 2016, Eversole filed her response to the State's memorandum in opposition to her motion to suppress evidence. (Doc. No. 28). The trial court denied Eversole's motion to suppress evidence on January 10, 2017. (Doc. No. 30).

---

[2] In addition to arguing that Officer Wehage's search of her vehicle was improper under *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710 (2009), Eversole argued that the State could not rely on inevitable doctrine discovery or an inventory search of the vehicle because her vehicle was left at the scene.

{**¶5**} On January 25, 2017, Eversole withdrew her plea of not guilty and entered a no-contest plea. (Doc. Nos. 33, 34). In exchange for her change of plea, the State agreed to dismiss the automobile-forfeiture specification.[3] (Doc. No. 33). On January 27, 2017, the trial court accepted Eversole's no-contest plea and found her guilty. (Doc. No. 34).

{**¶6**} On March 8, 2017, the trial court sentenced Eversole to five years of community control. (Doc. No. 37).

{**¶7**} Eversole filed her notice of appeal on April 5, 2017. (Doc. No. 51). She raises one assignment of error for our review.

## Assignment of Error

### The Trial Court Erred by Overruling the Motion to Suppress.

{**¶8**} In her assignment of error, Eversole argues that the trial court erred by denying her motion to suppress the heroin as evidence. Eversole argues that the search of her vehicle resulting in discovery of the heroin was conducted without a warrant and not pursuant to any exception to the warrant requirement under the Fourth Amendment. Relying on *Gant*, 556 U.S. 332, Eversole makes two arguments on appeal. First, she argues that the trial court erred by concluding "that the search incident to arrest warrant exception applied to a stated policy of searching every vehicle of every OVI arrest, for evidence of additional crimes without any

---

[3] The State entered a nolle prosequi on the specification on March 9, 2017. (Doc. No. 47).

objective connection or nexus to the vehicle." (Appellant's Brief at 3). Second, she argues that Officer Wehage lacked a reason to believe that evidence of the crime of arrest—OVI—would be found in her vehicle. For the reasons below, we conclude that Officer Wehage's search of Eversole's vehicle—which led to the discovery of the heroin inside her purse—was not lawfully conducted under the search-incident-to-a-lawful-arrest exception of the Fourth Amendment's warrant requirement.

{¶9} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶10} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Ohio Constitution, Article I, Section 14, generally prohibits warrantless searches and seizures, and any evidence

that is obtained during an unlawful search or seizure will be excluded from being used against the defendant. *State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12, citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961). The Fourth Amendment does not explicitly provide "that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment." *State v. Jenkins*, 3d Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9, citing *Mapp* at 649 and *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914).

{¶11} Warrantless searches "'are per se unreasonable,' 'subject only to a few specifically established and well-delineated exceptions.'" *Gant*, 556 U.S. at 338, quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Id.* at 338, citing *Weeks v. United States*, 232 U.S. 383, 392, 34 S.Ct. 341 (1914). "The search-incident-to-arrest exception has two rationales: protecting arresting officers and safeguarding evidence that the arrestee might conceal or destroy." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 182, citing *Gant* at 339. *See also Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034 (1969) (noting that searches incident to arrest are reasonable "in order to remove any weapons [the arrestee]

might seek to use" and "in order to prevent [the] concealment or destruction of evidence").

**{¶12}** "The United States Supreme Court defined the scope of a search incident to arrest in *Chimel* and stated that an officer making a lawful custodial arrest may search 'the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.'" *State v. Caulfield*, 2d Dist. Montgomery No. 25573, 2013-Ohio-3029, ¶ 27, quoting *Chimel* at 763. "Later, in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981), the United States Supreme Court explained that once a police officer 'has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.'" *Id.*, quoting *Belton* at 460.

**{¶13}** In *Gant*, the United States Supreme Court revisited *Belton* and clarified the scope of a lawful search incident to arrest. *See Gant* at 342-343. In *Gant*, the Court concluded that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is *reasonable to believe the vehicle contains evidence of the offense of arrest*." (Emphasis added.) *Id.* at 351. *Accord State v. Grubb*, 186 Ohio App.3d 744, 2010-Ohio-1265, ¶ 18 (3d Dist.).

{¶14} "At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, and that it meets Fourth Amendment standards of reasonableness." *Steinbrunner*, 2012-Ohio-2358, at ¶ 12, citing *City of Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), at paragraph two of the syllabus, *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978), and *City of Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999).

{¶15} Because Eversole was handcuffed and detained in Officer Wehage's patrol vehicle, the issue in this case is whether Officer Wehage could reasonably have believed that evidence of the crime of arrest might be found in Eversole's vehicle. *Compare State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, ¶ 17 ("Here, there is no question that Leak was arrested, secured, and not within reaching distance of the car prior to the search of the car. The question then becomes whether it was reasonable to believe that the car contained evidence of Leak's offense of arrest—domestic violence."); *Thomas v. Plummer*, 489 Fed.Appx. 116, 121 (6th Cir.2012); *United States v. Reagan*, 713 F.Supp.2d 724, 727 (E.D.Tenn.2010) ("In this case, it is uncontested that Ranger Garner's search occurred after the Defendant was arrested and secured in the back of a patrol car. Accordingly, the Court finds that the Defendant was not within reaching distance of the passenger compartment of her vehicle at the time of Ranger Garner's search. Thus, the only issue for the Court's resolution is whether it was reasonable for Ranger Garner to believe that the

Defendant's vehicle contained evidence of the offense for which she was arrested, DUI.").

{¶16} The United States Supreme Court did not provide an independent explanation of the meaning of the phrase "reason to believe" or explain when it is reasonable for a law enforcement officer to believe that the passenger compartment of a vehicle might contain evidence of the crime for which the vehicle's occupant was arrested, which has created a host of uncertainties. *See Gant* at 356, 364 (Alito, J., dissenting); *Reagan* at 727-728 ("The Supreme Court has not expressly clarified the meaning of the phrase 'reasonable to believe' as it is used in *Gant*, nor has it expounded on when it is reasonable for a law enforcement officer to believe that the passenger compartment of a vehicle contains evidence of the crime for which the vehicle's occupant was arrested. * * * The Supreme Court's reticence has led to confusion among the lower federal courts and various state courts."). *See also Megginson v. United States*, 556 U.S. 1230, 129 S.Ct. 1982 (2009) (Alito, J., dissenting from decision to grant, vacate, and remand) ("This case thus appears to present an important question regarding the meaning and specificity of the reasonable suspicion requirement in *Gant*. Because of the ambiguity of the new *Gant* test and the frequency of roadside arrests, I would grant certiorari in this case to provide much needed clarification."). Indeed, "*Gant* itself gives little guidance" in its "relatively scant exposition":

"In many cases, as when a recent occupant is arrested for a traffic violation," the Court explained, "there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others * * * the offense of arrest [a drug crime for instance] will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein."

*Thomas* at 121, quoting *Gant* at 344.

{¶17} As a result of that ambiguity, courts have struggled to quantify the suspicion standard required to permit searches incident to lawful arrests under *Gant*'s evidence-of-the-crime-of-arrest search authorization. Two primary approaches to *Gant*'s reason-to-believe language have developed—the "categorical" approach and the "reasonableness" approach. *See id.* at 121-122. *See also Reagan* at 729; *People v. Evans*, 200 Cal.App.4th 735, 746-747, 133 Cal.Rptr.3d 323 (2011) ("Outside the context of minor traffic offenses, which *Gant* held would not provide an evidentiary basis for a search, courts have generally adopted one of two approaches to the question. Some courts have concluded or implied that whether it is reasonable to believe offense-related evidence might be found in a vehicle is determined solely by reference to the nature of the offense of arrest, rather than by reference to the particularized facts of the case. Others have

required some level of particularized suspicion, based at least in part on the facts of the specific case.").

{¶18} Describing the categorical approach, the Sixth Circuit Court of Appeals noted, "Some courts hold that an officer could reasonably believe that a vehicle contained evidence of the crime of arrest if, and only if, 'the offense of arrest of an occupant of a vehicle is, *by its nature*, for a crime that might yield physical evidence.'" (Emphasis added.) *Thomas* at 121, quoting *Brown v. State*, 24 So.3d 671, 681 (Fla.App.2009) and citing *People v. Nottoli*, 199 Cal.App.4th 531, 553, 130 Cal.Rptr.3d 884 (2011), *State v. Cantrell*, 149 Idaho 247, 254, 233 P.3d 178 (2010) ("Cantrell was arrested for DUI, and the DUI supplied the basis for the search."), citing *Brown*, and *United States v. Oliva*, S.D.Tex. C.R. No. C-09-341, 2009 WL 1918458, *6 (July 1, 2009). *See also Reagan* at 729, citing *Brown* at 679 ("'we hold that "reasonable belief," as used in *Gant*, is solely determined from the nature of the offense of arrest'"), *Cantrell* at 183-185 ("relying []on *Brown* and holding that a search incident to a DUI arrest was lawful under *Gant* 'because the offense of the arrest [, DUI,] will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein, and because a DUI is an offense for which police could expect to find evidence in the passenger compartment"), *Cain v. Arkansas*, 2010 Ark.App. 30, 373 S.W.3d 392, 396 (2010) ("reasoning that a search incident to a DUI arrest was lawful under *Gant* because

'an open container could have been found in appellant's vehicle'"), *Cain* at 399 (Brown, J., dissenting) ("'the majority sends the message'" that officers can search a vehicle incident to a lawful arrest for DUI 'without anything more prompting such a search'"), and *Oliva* at *6 ("differentiating between a case where a defendant is arrested for a 'routine traffic violation' and a case where a defendant is arrested for driving while intoxicated, and holding that in the latter case 'it would be reasonable for officers to search the vehicle for evidence of driving while intoxicated, including open or empty containers'").

{¶19} In adopting the categorical approach, the court in *Brown* "reasoned that the [United States] Supreme Court intended to give its imprimatur to a system of classifying criminal offenses into two distinct groups: those that 'by [their] nature * * * might yield physical evidence,' and those 'for which there is no physical evidence.'" *Reagan* at 731, quoting *Brown* at 678, 681-682. *Gant* provided the [court in Brown] with one example of an offense in the former group, and six specific examples of offenses in the latter group."[4] *Id.* "It is clear that the [court in

---

[4] "In *Gant*, the Supreme Court stated that the offenses of arrest in *Belton* and *Thornton* 'will supply a basis for searching the passenger compartment of the arrestee's vehicle and any containers therein.'" *Reagan* at 731, quoting *Gant* at 344. "In *Belton*, the offense of arrest was unlawful possession of marijuana." *Id.*, citing *Belton*, 453 U.S. at 456. "In *Thornton*, the offense of arrest was unlawful possession of marijuana and crack cocaine." *Id.*, citing *Thornton*, 541 U.S. at 618. "Accordingly, the [court in *Brown*] reasoned that the Supreme Court meant to classify unlawful possession of a controlled substance as a criminal offense that 'by [its] nature * * * might yield physical evidence.'" *Id.*, quoting *Brown* at 681. "On the other side of the criminal offense dichotomy, *Gant* specified six criminal offenses 'for which there is no physical evidence.'" *Id.*, quoting *Brown* at 681. As such, the court in *Brown* "reasoned that the Supreme Court meant to classify minor traffic violations—specifically (1) driving without a seatbelt fastened, (2) failing to secure passenger children in seatbelts, (3) driving without a license, (4) failing to provide proof of insurance, (5) speeding, and

*Brown*] envisioned a dichotomy of criminal offenses." *Id.* at 730. "The notion that crimes can be categorized in this manner comes from the [court in *Brown*'s] understanding of two passages from *Gant*—passages which themselves were modeled on Justice Scalia's concurring opinion in *Thornton*." *Id.*, citing *Brown* at 678 ("Our conclusion on this issue finds ample support in the concurring opinion of Justice Scalia in *Thornton*.").

{¶20} Regarding the reasonableness approach, the Sixth Circuit noted, "Other courts have eschewed this categorical approach, reasoning instead that an officer may search a vehicle 'when it is reasonable to believe, based upon common sense factors and the totality of the circumstances, that evidence of the offense of the arrest is inside.'" *Thomas* at 121, quoting *Reagan* at 728 and citing *People v. Chamberlain*, 229 P.3d 1054, 1057 (Colo.2010) ("The nature of the offense of arrest is clearly intended to have significance, and in some cases it may virtually preclude the existence of real or documentary evidence, but a broad rule automatically authorizing searches incident to arrest for all other offenses cannot be reconciled with the actual holding of *Gant*.") and *Evans*, 200 Cal.App.4th at 747-752 (adopting the *Chamberlain* rationale). *See also Taylor v. State*, 224 Md.App. 476, 490, 121

---

(6) driving with a suspended license—'as criminal offenses for which there is no physical evidence.'" *Id.*, quoting *Brown* at 681-682.

A.3d 167 (2015) ("Whether a belief is reasonable depends upon the totality of the circumstances, rather than a categorical rule.").

**{¶21}** Recognizing potential application difficulties, the court in *Reagan* disagreed with adopting the categorical approach adopted in *Brown* for three reasons:

> First, any attempt to categorize every criminal offense as being either one that might yield physical evidence or one for which there is no physical evidence runs into interpretive problems. It is relatively easy to decide that certain criminal offenses, like the six minor traffic violations * * * are offenses for which there is no physical evidence. But it is more difficult to decide whether a criminal offense such as telephone harassment "by [its] nature * * * might yield physical evidence." Reasonable people could disagree about exactly what can be considered "physical evidence," and about whether there "might" be any physical evidence of telephone harassment.
>
> Second, even if it were possible to simply classify criminal offenses using the *Brown* dichotomy, the only method for determining which offenses fit in each class would be a series of decisions rendered by various courts throughout the country. This piecemeal approach to classifying offenses could lead to jurisprudential inconsistencies.

For example, a court in one state may determine that a certain crime per se might yield physical evidence, while a court in another state may decide that the very same crime is, per se, a crime for which there is no physical evidence. Moreover, because there are myriad criminal offenses, such piecemeal classification could create uncertainty among law enforcement officers. Further complicating this problem is the fact that many common criminal offenses have different elements or are defined with different terminology across different jurisdictions.

The third, and most significant, problem with the rule of *Brown* is that its application to a particular case might produce unreasonable or unintended results. *Brown* held that incident to the lawful arrest of the occupant of a vehicle, law enforcement officers may search the passenger compartment of that vehicle and any containers therein when the offense of arrest is, by its very nature, an offense that might yield physical evidence. This rule could actually allow police to search a vehicle passenger compartment incident to an arrest when it is wholly unreasonable to believe that evidence of the offense of arrest is inside, but the nature of the offense per se makes a search permissible.

*Reagan* at 732, quoting *Brown* at 681.

{¶22} Indeed, Courts following the reasonableness approach have done so because the categorical approach would create "a non-case-specific test [that] would suffer from objections similar to those that *Gant* condemned in the broad reading of *Belton*." *Chamberlain* at 1057. As support, those jurisdictions point to "[t]he [United States Supreme] Court's use of phrases [in *Gant*] like 'reasonable to believe' and 'reasonable basis to believe' [as] further indication that it intends some degree of articulable suspicion, a standard which it has previously acknowledged in its Fourth Amendment jurisprudence as meriting official intrusion." *Id.*

{¶23} However, the challenge underlying the reasonableness approaches lies with the Court's failure to explain the quantum of suspicion required. *See, e.g.*, *Taylor*, 224 Md.App. at 488-489 (discussing the quantum of suspicion standards applied to justify searches under *Gant*'s reason-to-believe rule—a preponderance of the evidence, probable cause, and the reasonable suspicion for a stop-and-frisk search under *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968)); 3 Wayne R. LaFave, *Search And Seizure*, Section 7.1(d) (5th Ed.2016). *See also State v. Price*, 6th Dist. Sandusky No. S-11-037, 2013-Ohio-130, ¶ 32 (Yarbrough, J., concurring) (discussing *Gant*'s reason-to-believe suspicion standard); *Reagan* at 728 (discussing the standards applied to *Gant*'s reason-to-believe rule). The majority of the jurisdictions that have addressed the issue have concluded that *Gant*'s reasonable-

to-believe standard requires less than probable cause, "'because otherwise *Gant*'s evidentiary rationale would merely duplicate the "automobile exception," which the Court specifically identified as a distinct exception to the warrant requirement.'" *Taylor*, 224 Md.App. at 489, quoting *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir.2010), citing *Gant* at 347. *See also Evans* at 748-749 ("While [the reasonable-to-believe] language is often used synonymously with probable cause, in light of the automobile exception, which already provides an exception to the warrant requirement whenever police have probable cause to believe an automobile contains evidence of a crime, a requirement of probable cause in this context would render the entire second prong of the *Gant* search-incident-to-arrest exception superfluous."). "'Rather, the "reasonable to believe" standard probably is akin to the "reasonable suspicion" standard required to justify a *Terry* search.'" *Taylor*, 224 Md.App. at 489, quoting *Vinton* at 25, citing *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921 (1972) ("noting that a *Terry* search is permissible if the officer has reason to believe that the suspect is armed and dangerous"). *See Price* at ¶ 32 (noting that the "standard appears closer to 'reasonable suspicion' than to probable cause); *Reagan* at 728 (construing *Gant*'s reason-to-believe standard as the functional equivalent of the reasonable-belief standard), citing *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir.2006); *Evans* at 749 ("because the majority [in *Gant*] at several points requires only a reasonable belief that evidence 'might' be

found, it seems more likely that the Court intended a lesser degree of suspicion commensurate with that sufficient for limited intrusions, like investigatory stops"), citing *Chamberlain* at 1057 and 3 LaFave at Section 7.1(d). *See also Megginson*, 556 U.S. at 1230 (Alito, J. dissenting) (referring to *Gant*'s reason-to-believe exception as "the reasonable suspicion requirement").

**{¶24}** Indeed, courts following the reasonableness approach have construed *Gant*'s reason-to-believe standard under the "reasonable suspicion" standard required to justify a search under *Terry*. *See Evans* at 749, citing *Chamberlain* at 1057 and *Vinton* at 25 ("Rather, the 'reasonable to believe' standard probably is akin to the 'reasonable suspicion' standard required to justify a *Terry* search."), citing *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921 (1972) ("noting that a *Terry* search is permissible if the officer 'has *reason to believe* that the suspect is armed and dangerous'" (Emphasis added)); *Taylor*, 224 Md.App. at 489-490; 3 LaFave at Section 7.1(d). *See also Reagan* at 728. "Accordingly, the officer's assessment of the likelihood that there will be relevant evidence inside the car must be based on more than "a mere hunch," but "falls considerably short of [needing to] satisfy[ ] a preponderance of the evidence standard." *Vinton* at 25, quoting *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744 (2002). *See also* 3 LaFave at Section 7.1(d). As a result, courts following the reasonableness approach apply a number of considerations in determining whether law enforcement had reason to

believe evidence of the crime of arrest might be found in the vehicle. *See Taylor*, 224 Md.App. at 490 (applying factors, including "(1) a police officer's training and experience; (2) the lack of an innocent explanation for a driver's seemingly illicit behavior; and (3) the nature of the crime of arrest" to determine the reasonableness of a search incident to arrest); *Reagan* at 733, fn.7 ("Many different facts may provide a law enforcement officer with reason to believe that evidence of DUI is located inside the passenger compartment of a vehicle. Examples include observations of the driver drinking while driving, observations of an open container of alcohol in plain view inside the passenger compartment, statements made by the occupants of the vehicle indicating that an open container is in the passenger compartment, the smell of alcohol emanating from within the passenger compartment, or indications that the driver was traveling from a location such as a recreational area or campground where alcohol is not available unless it is transported in by private vehicle.").

{¶25} The outcome of this case primarily depends on which of the two approaches to *Gant*'s reason-to-believe language we follow, and secondarily depends on how we classify the offense of OVI. This case presents this court with an issue of first impression as to whether OVI is the type of offense that will, by its nature, provide law enforcement a reason to believe they will find evidence of the crime in a vehicle or whether it is the type of offense where a particularized

-19-

consideration of the circumstances surrounding the offense is necessary. Clearly, there is a divergence in federal and state case law deciding which approach to apply, especially with respect to OVI offenses. *Compare Thomas*, 489 Fed.Appx. at 121 ("Courts following *Brown* have consistently held that an officer who arrests a driver for operating under the influence has a reasonable belief that there will be evidence of operating under the influence in the car."), citing *Cantrell*, 233 P.3d at 185 ("Cantrell was arrested for DUI, and the DUI supplied the basis for the search.") and *Oliva*, 2009 WL 1918458, at *6 ("holding that, because [the] officer arrested defendant for driving while intoxicated, [the] search of vehicle was permissible"), *Cain*, 373 S.W.3d at 397 (concluding that "an open container of alcohol could have been found in appellant's vehicle, making the officer's search permissible under *Gant*"), and *Evans* at 750 (concluding that "when a driver is arrested for driving under the influence, or being under the influence, it will generally be reasonable for an officer to believe evidence related to that crime might be found in the vehicle") *with Reagan* at 733 ("The Court finds that it is not reasonable to believe that evidence of DUI is inside the passenger compartment of a vehicle based solely upon the nature of the charge or the existence of evidence that the vehicle's driver is intoxicated.") and *United States v. Taylor*, 49 A.3d 818, 824 (D.C.2012) (declining to follow the categorical approach and holding "that officers must have reasonable, articulable suspicion to conduct a vehicle search under the second prong of *Gant*").

{¶26} Although the Supreme Court of Ohio has not expressly decided which approach to apply under *Gant*, the Court's analysis in *Leak* is enlightening. 145 Ohio St.3d 165, 2016-Ohio-154. In particular, in addressing whether law enforcement had reason to believe that the vehicle contained evidence of Leak's arrest, the Supreme Court of Ohio concluded that "[t]here is nothing in the record that could have established a connection between the car that Leak was sitting in prior to his arrest and the offense for which he was arrested." *Id.* at ¶ 18. As such, the Supreme Court of Ohio concluded that "the officer's belief that the car contained evidence of the domestic-violence charge unreasonable." *Id.* This analysis hints that the Supreme Court of Ohio would employ the reasonableness approach. We conclude that *Gant*'s reason-to-believe test requires a court to determine whether law enforcement had reason to believe, based on common sense and the totality of the circumstances, that there may be evidence of the offense of the arrest in the accused's vehicle.

{¶27} However, our inquiry in this case does not end with our conclusion to apply the reasonableness approach because the offense of OVI does not neatly lend itself toward a crime inherently providing a reasonable basis to search under *Gant*. *See Evans* at 750 ("*Gant* teaches that 'traffic violation[s]' do not provide a reasonable basis to search, whereas offenses in which there is evidence of drug possession do."), quoting *Gant* at 343-344. *Evans* illustrates this point. In that case,

the court concluded that the reasonableness approach is the appropriate framework under which *Gant* should be applied, but went on to conclude that arrests for OVI, *alone*, will provide a law enforcement officer with reason to believe that evidence of the OVI might be found in the vehicle. *Id.* ("It is certainly logical and reasonable to expect that items related to alcohol or drug consumption, such as alcoholic beverage bottles or drug paraphernalia, might readily be contained in the intoxicated driver's car.). Although we agree that the reasonableness test is the appropriate approach under which the second prong of *Gant* must be analyzed, we part company with *Evans* on this point and follow the rationale of *Reagan*. *See Reagan* at 733-734. Accordingly, we decline to conclude that OVI is the type of offense that will *always* yield a reason to believe that law enforcement might find evidence of that offense in a vehicle incident to the arrest of the operator. Stated another way, it is not always logical and reasonable to expect that items related to alcohol or drug consumption may be found in a vehicle after its operator is arrested for OVI.

**{¶28}** For those reasons, we hold that law enforcement may only search a vehicle incident to an OVI arrest when that law-enforcement officer has reason to believe, based on common-sense factors and the totality of the circumstances, that evidence of the offense of arrest is inside. *Accord id.* at 728. *See Taylor*, 224 Md.App. at 490; *Taylor*, 49 A.3d at 824-829. *See also Price*, 2013-Ohio-130, at ¶ 17 (applying a totality-of-the-circumstances analysis to a search incident to a lawful

-22-

arrest under the second prong of *Gant*); *Caulfield*, 2013-Ohio-3029, at ¶ 33 (applying a totality-of-the-circumstances analysis to determine the reasonableness of a search incident to arrest). That is, for law enforcement to justly search a vehicle incident to an arrest for OVI, there must be additional indicators that alcohol was being consumed, or drugs were being used, *in* the vehicle. *See Taylor*, 224 Md.App. at 494. Without those additional indicators, a search incident to an OVI arrest is unreasonable:

> For example, it is not too far-fetched to imagine a situation where a police officer observes a patron drink several beers in an establishment in a short period of time. If the police officer then observes the patron leave the establishment, get into a vehicle in the parking lot, and drive off, the officer has probable cause to pursue the vehicle, effect a traffic stop, and arrest the driver for DUI. Under the rule of *Brown*, whether the officer may lawfully search the passenger compartment of the vehicle without a warrant incident to that DUI arrest depends entirely on whether DUI is, by its very nature, a criminal offense that might yield physical evidence.

*Reagan* at 732, citing *Brown* at 678 ("It is clear * * * that the 'nature of the charge' is determinative of whether there exists a reasonable basis to search for evidence,

not whether there is some independent evidence that gives rise to a belief that the particular vehicle contains evidence.").

{¶29} Finally, turning to Eversole's case, we conclude that the trial court erred by denying Eversole's motion to suppress the heroin as evidence. When analyzing the search-incident-to-a-lawful arrest exception to the Fourth Amendment under the reason-to-believe prong of *Gant*, a three-step process has emerged: (1) determining the underlying arrest; (2) determining whether that arrest was lawful; and (3) determining whether law enforcement had reason to believe that evidence of the crime of arrest may be found in the vehicle. *See Thomas*, 489 Fed.Appx. at 120 (noting that the reason-to-believe inquiry under *Gant* "has two steps. First, we must decide what to treat as the crime of arrest. Then, we must determine whether" law enforcement could have reasonably believed that evidence of the crime of arrest might be found in the vehicle). *See also State v. Whipple*, 12th Dist. Clermont No. CA2016-06-036, 2017-Ohio-1094, ¶ 15 ("in order for a search to be conducted pursuant to the search incident to arrest exception, the underlying arrest must be lawful"), citing *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 24, citing *Chimel* at 753.

{¶30} At the suppression hearing, the State offered the testimony of Officer Wehage who testified that he has been a police officer with the City of Van Wert for 11 years. (Nov. 29, 2016 Tr. at 14-15). Officer Wehage testified that he

responded to a dispatch to Westwood Drive in Van Wert on May 14, 2016 after the Van Wert City Police Department dispatch center received a report concerning Eversole's driving. (*Id.* at 16-17). Officer Wehage initiated a traffic stop of the vehicle operated by Eversole after he witnessed Eversole commit a marked-lanes violation. (*Id.* at 17-18). When asked about the marked-lanes violation, Eversole informed Officer Wehage that she was "concerned with some money issues." (*Id.* at 19). Based on Officer Wehage's suspicion that Eversole was under the influence of alcohol or drugs, he conducted field-sobriety tests of Eversole. (*Id.* at 18-24, 28).

> {¶31} Officer Wehage testified that he
>
> place[d] [Eversole] under arrest, put her into handcuffs per department policy and made sure that the handcuffs were finger gapped and double locked and behind her back[,] advised her of her Miranda rights, which she claimed that she understood[,] and she was placed in the rear seat of [Officer Wehage's] vehicle.

(*Id.* at 24). After Eversole was secured in the rear seat of Officer Wehage's patrol vehicle, he "went back up to her vehicle and conducted a search of the interior of the vehicle" "because she was arrested for Operating a Vehicle Impaired and [he] was looking for elements of her impairment." (*Id.*). According to Officer Wehage, "In this case, I believed that she was under the influence of drugs or narcotics, so I

was going to look for evidence of narcotics use." (*Id.*). Officer Wehage further clarified,

> The search after she was arrested for the OVI was just to look for elements of the crime that she was arrested for, being the OVI and this case again, I was searching for items of narcotics or prescription drugs or anything that would show why she would be possibly [sic] impaired, not on alcohol, but on a drug.

(*Id.* at 29).

**{¶32}** Officer Wehage testified that he found items that he suspected to be drugs and drug paraphernalia inside of Eversole's purse, which was inside Eversole's vehicle. (*Id.* at 25). Specifically, Officer Wehage "located a snort tube and it was inside of a glass case, like a set of glasses case." (*Id.*). He further testified that he continued to search "the pocketbook where she got her driver's license out of [and] located another snort tube and there was also a folded up piece of gum wrapper" containing an "off white powder residue which is consistent with narcotics." (*Id.*).

**{¶33}** After Officer Wehage finished searching Eversole's vehicle, he transported her to the police department. (*Id.* at 26).

**{¶34}** On cross examination, Officer Wehage testified that he did not observe any items in plain view inside Eversole's vehicle that he would consider contraband

and Eversole did not admit that there was any contraband inside her vehicle. (*Id.* at 31). He testified that the only reason he searched Eversole's vehicle was because she was arrested for OVI and he was searching "for elements of the OVI." (*Id.*). According to Officer Wehage, it is "standard policy" to search a vehicle when a person is arrested for OVI. (*Id.* at 32). Officer Wehage did not make any "separate observations" indicating that Eversole was impaired on drugs other than his opinion that she was impaired on drugs. (*Id.*). Officer Wehage further testified that Eversole's vehicle was not impounded when she was arrested. (*Id.* at 31).

{¶35} On re-direct examination, Officer Wehage testified that he has had experience with OVI arrests involving narcotics use. (*Id.* at 33). He testified that he searched Eversole's vehicle because he believed—based on his experience with OVI offenses involving narcotics use—that the vehicle contained evidence relevant to the OVI offense. (*Id.* at 33-34). Regarding his belief, Officer Wehage testified:

> When you arrest somebody for operating a vehicle impaired, as I explained earlier, such as with alcohol, one, you can have the odor of alcohol coming from out of the vehicle, that's also an indicator of an open container as everybody wants to explain the [sic], sometimes you get odors, like with marijuana, you have the odor of marijuana, either raw marijuana or burnt marijuana, they could be exiting the vehicle, which, even without an OVI arrest is probable cause to search inside

of a vehicle. In this case here, opiates does not limit yourself only to illegal narcotics. It could be pills in a pill bottle. There could be some other form of odorless opiate use. In this case, an odor alone coming from the vehicle, I don't need that because again, if it was pills that she would have been taking, I don't know if you've ever smelled a pill bottle, you can't really smell a big difference in pills that contain opiates compared to a powder of opiate, an opiate powder. In this case here, as I, as I did locate inside the vehicle, there was snort tubes, there could be other items that could be associated with it such as cutting, a lot of people use glass or a surface to cut the items up on, there could be spoons that were used to cook up the heroin. Those are items that could be concealed very easily inside the vehicle and not be in plain view.

(*Id.* at 35).

**{¶36}** Eversole does not dispute the lawfulness of her arrest or that the crime of arrest was OVI. As such, at issue in this case is whether Eversole's vehicle was properly searched incident to her arrest. We conclude that it was not. There is no competent, credible evidence in the record justifying Officer Wehage's search of Eversole's vehicle incident to her arrest—that is, there is no competent, credible evidence in the record that the State met its burden of proving that Officer Wehage

had reason to believe, based on common-sense factors and the totality of the circumstances, that evidence of Eversole's OVI arrest was inside her vehicle. Officer Wehage did not articulate any particularized reason why he believed that Eversole's vehicle contained evidence of OVI. *Compare Reagan*, 713 F.Supp.2d at 733 ("In this case, Ranger Garner did not articulate any particularized reason why he believed that the Defendant's vehicle contained evidence of DUI."). *See also Taylor*, 49 A.3d at 827 ("There was no testimony that appellee was nervous, that he made furtive gestures, or that he appeared to be attempting to hide something in the vehicle."); *Caulfield*, 2013-Ohio-3029, ¶ 32 ("Other than the traffic violation, there was no criminal activity observed, and there was no contraband discovered prior to the search of the vehicle.").

**{¶37}** Officer Wehage provided two reasons why he searched Eversole's vehicle: (1) it is the police department's "standard policy" to search an operator's vehicle incident to his or her arrest for OVI and (2) he believed that the vehicle contained evidence relevant to the OVI offense based on his experience with OVI offenses involving narcotics use. Neither of these reasons is particularized to Eversole or the circumstances of this case. *See Reagan* at 733. *See also State v. Sheridan*, 3d Dist, Allen No. 1-10-50, 2011-Ohio-6011, ¶ 8 (concluding that it was unreasonable to search Sheridan's vehicle incident to his arrest because "the officer testified that he conducted the search of the vehicle after the arrest, but did not say

why he conducted the search. He merely testified that he went to investigate the vehicle"). Based on our conclusion above that law enforcement may only search a vehicle incident to an OVI arrest when that law-enforcement officer has reason to believe, based on common-sense factors and the totality of the circumstances, that evidence of the offense of the arrest is inside, a police department's standard policy does not provide a reasonable basis to search and is contrary to *Gant*. Furthermore, although a law-enforcement officer's general prior experience is one of the common-sense factors to consider when deciding the reasonableness of his or her belief that evidence of specific crime is located inside a vehicle's passenger compartment, that general prior experience alone is not enough to establish a reasonable belief that evidence of OVI is contained in a vehicle. *See Reagan* at 733; *Taylor*, 49 A.3d at 827 (concluding that a law enforcement officer's experience involving OVI arrests alone is insufficient to provide a reasonable basis to search the vehicle incident to arrest for OVI).

**{¶38}** Therefore, there is no competent, credible evidence in the record providing an evidentiary basis for Officer Wehage's search of Eversole's vehicle. *Compare Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, at ¶ 18 ("There is nothing in the record that could have established a connection between the car that Leak was sitting in prior to his arrest and the offense for which he was arrested."); *Caulfield* at ¶ 33 ("In this case, the totality of the circumstances would not cause an officer to

reasonably believe that the vehicle contained evidence of criminal activity."). For these reasons, the search of Eversole's vehicle was unreasonable within the meaning of the Fourth Amendment. *Leak* at ¶ 18. As such, the trial court erred by denying Eversole's motion to suppress the heroin as evidence.

{**¶39**} Eversole's assignment of error is sustained.

{**¶40**} Having found error prejudicial to the appellant herein in the particulars assigned and argued in her assignment of error, we reverse the judgment of the trial court and remand for further proceedings.

*Judgment Reversed and*
*Cause Remanded*

**ZIMMERMAN, J., concurring separately.**

{**¶41**} I write separately to reinforce the rule of law set forth in *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710 (2009). As noted in the lead opinion, Judge Preston identifies *Arizona v. Gant* as the seminal case relative to the scope of a lawful search incident to arrest. Such search (incident to arrest) however, may be attacked if found to be improper under a reason-to-believe analysis. As such, law enforcement must provide a particularized explanation as to why they believe an arrested person's vehicle may contain evidence of the arrested offense to justify their search. This is the gravamen of *Gant* and answers why this case must be reversed.

{¶42} In contrast, the dissent states otherwise and opines that an OVI arrest, by itself, *ipso facto*, gives rise to search a vehicle. This logic is flawed under a plain reading of *Gant*.


**SHAW, J., dissents.**

{¶43} I respectfully dissent from the majority opinion. While I acknowledge that there is some case authority that would support the majority's position, I think the greater weight of the case authority from courts throughout the United States, and the more persuasive reasoning, supports an affirmance in this case. Therefore, I would affirm the trial court's judgment based on the following analysis.

*Relevant Facts and Procedural History*

{¶44} On May 14, 2016, a man named Scott Campbell called the police to report that he was following a 4-door brown Pontiac that had made several lane violations. Campbell indicated that he had seen the driver of the Pontiac almost cause a car wreck and that he was concerned for the welfare of the driver, which happened to be Eversole. Campbell followed Eversole until she stopped at Citizens National Bank.

{¶45} Officer Adam Wehage of the Van Wert City Police Department was dispatched to the area. He located Eversole's vehicle and followed her when she left the bank. Officer Wehage observed Eversole cross over the double yellow

center lines with both tires, prompting a vehicle in the other direction to move toward the curb to avoid a collision. Officer Wehage indicated that he then conducted a traffic stop of Eversole's vehicle.

**{¶46}** Officer Wehage approached Eversole's vehicle from the passenger side due to traffic and asked her if she noticed the vehicle she had just caused to avoid her, and she responded that she did not because she was concerned with some money issues with her check. Officer Wehage indicated that Eversole was "acting very lethargic," that her motion was "slow," which were "items of concern" that caught his attention. (November 29, 2016, Tr. at 19).

**{¶47}** Officer Wehage then asked for Eversole's license, registration and insurance card. According to Officer Wehage, Eversole handed him her driver's license then just "stopped and had a blank stare on her face and didn't produce anything else." (November 29, 2016, Tr. at 19). Officer Wehage then had Eversole exit the vehicle and took her over to the sidewalk to perform field sobriety tests.

**{¶48}** Before performing standard field sobriety tests, Officer Wehage checked Eversole's eyes and her pupil size. Officer Wehage indicated that Eversole's eyes were "droopy," red and bloodshot. (*Id.* at 20). Officer Wehage indicated that Eversole's pupils did not react to light from his flashlight at all, which was a potential sign of opiate use.

**{¶49}** Officer Wehage then performed the HGN test and noted that there was a lack of smooth pursuit in both of Eversole's eyes. Eversole told Officer Wehage that she got off work late, had gotten up early and had been running errands, making her tired.

**{¶50}** Eversole then performed the "walk and turn" test, but because Eversole had a problem with one of her feet the test was modified. Even with the modification, Eversole "wasn't able to stay in the starting position," though Officer Wehage did not know if Eversole's claimed foot injury had anything to do with it; nevertheless, Officer Wehage stated that Eversole's failure was an indicator of impairment. (November 29, 2016, Tr. at 22). Officer Wehage also noted other indicators of impairment in Eversole's walk and turn test, specifically that Eversole was not able to touch heal to toe during the test and that she stopped between each step to keep herself balanced.

**{¶51}** Finally, Officer Wehage had Eversole perform the "one leg stand" test, which involved holding her foot approximately 6 inches off of the ground and counting to 30 seconds. Officer Wehage indicated that Eversole's foot was only an inch or two off the ground and that she had to put her foot down when she got to 13. Officer Wehage stated that Eversole continued counting for multiple "seconds" while the foot was on the ground. Officer Wehage also noted that by the time Eversole got to 16, he had already reached a 30 second count, meaning that she was

counting at an extremely slow rate with a slow "body clock," which he felt was "[a]nother indicator of impairment and opiate use[.]" (November 29, 2016, Tr. at 24).

**{¶52}** At that time Officer Wehage placed Eversole under arrest for operating a vehicle impaired. Officer Wehage cuffed Eversole and placed her into his vehicle, then "went back up to [Eversole's] vehicle and conducted a search of the interior[.]" (*Id.*). Officer Wehage testified that he was looking for elements of impairment, specifically drugs or narcotics, as he believed Eversole was under the influence of narcotics. Inside Eversole's purse, officer Wehage located a powdery substance that was later tested and found to contain heroin.

**{¶53}** On July 8, 2016, Eversole was indicted in Van Wert County Common Pleas Court for Possession of Heroin in violation of R.C. 2925.11(A)/(C)(6)(a), a felony of the fifth degree. Eversole initially pled not guilty to the charge.

**{¶54}** On November 1, 2016, Eversole filed a motion to suppress the heroin that had been found in her purse, arguing that pursuant to *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710 (2009), it was unreasonable for Officer Wehage to search Eversole's vehicle for evidence of her arrested offense—OVI.

**{¶55}** A hearing was held on Eversole's suppression motion. At the hearing the State presented the testimony of Officer Wehage. After providing his primary

testimony, the State had Officer Wehage summarize why he got Eversole out of her car and why he searched her vehicle.  Officer Wehage testified as follows.

> Before I got her out of the vehicle, she was inside of the vehicle, she was very lethargic, again the prior driving history of her almost causing a crash, she wasn't even aware of a vehicle that was coming at her where she almost got into a collision with it, when I asked her for her driver's license, registration, proof of insurance, she was only able to provide me with her driver's license and the[n] she started staring blankly and didn't produce any of the other information for me.
>
> * * *
>
> The search after she was arrested for the OVI was just to look for elements of the crime that she was arrested for, being the OVI and this case, again, I was searching for items of narcotics or prescription drugs or perhaps anything that would show why she would be possibly impaired, not on alcohol, but on a drug.

 (November 29, 2016, Tr. at 28-29).

{¶56} On cross-examination, Officer Wehage admitted that he did not notice any suspicious "odors" coming from the vehicle, that Eversole made no admissions regarding contraband being in the vehicle, and that he did not see any contraband in

plain view. Officer Wehage indicated that the sole justification for his search was as part of an OVI arrest. However, on re-direct Officer Wehage acknowledged that being arrested alone did not give him the right to search "anything;" rather, he testified that he felt he had cause to believe that there was evidence in the vehicle related to the OVI, specifically opiates. (November 29, 2016, Tr. at 36).

{¶57} On January 10, 2017, the trial court issued a written decision overruling Eversole's suppression motion. The trial court was persuaded by Officer Wehage's testimony that Eversole was slow and lethargic, that her pupils were unresponsive, that her driving qualified her for a lawful traffic stop and that she had failed sobriety tests. The trial court found that under *Gant*, this evidence supported a search incident to arrest to look for narcotic evidence related to the OVI.

{¶58} After the trial court denied her suppression motion, Eversole pled no contest to the charge of Possession of Heroin and she was convicted of that offense. Eversole was sentenced to 5 years of community control. She then filed the instant appeal challenging the trial court overruling her suppression motion.

*Eversole's Argument*

{¶59} In her assignment of error, Eversole argues that the trial court erred in overruling her motion to suppress. Specifically, she contends that the Van Wert City Police Department had a policy to search *every* vehicle *every* time there was an OVI arrest and that such a policy of "unbridled discretion to rummage" is

unconstitutionally broad under *Arizona v. Gant*. Eversole also argues that, in this case specifically, Officer Wehage lacked a reasonable belief that evidence of the crime of arrest—OVI—would be found in her vehicle, thus it was error to permit Officer Wehage to search it.

*Standard of Review*

{¶60} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id*. citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.* citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist.1997).

*Analysis*

{¶61} The Supreme Court of the United States has emphasized that in every case addressing the reasonableness of a warrantless search a reviewing court should begin with the basic rule that, " 'searches conducted outside the judicial process,

without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " (Emphasis sic.) *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716 (2009), quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507 (1967). Among the exceptions to the warrant requirement, and of particular importance to this case, is a "search incident to a lawful arrest." *Id*. citing *Weeks v. United States,* 232 U.S. 383, 392, 34 S.Ct. 341 (1914). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant* citing *United States v. Robinson*, 414 U.S. 218, 230-234, 94 S.Ct. 467 (1973); *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034 (1969).

**{¶62}** In *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710 (2009), the Supreme Court of the United States sought to clarify the scope of a search of an *automobile* incident to arrest. By way of factual background, the defendant in *Gant* was arrested for driving on a suspended license. After he was handcuffed and placed into a police car, his vehicle was searched incident to that arrest and officers found cocaine in the pocket of a jacket in the back seat. The issue on appeal was whether such a search could be justified under the holdings in *Chimel v. California* 395 U.S. 752, 89 S.Ct. 2034 (1969) and *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860 (1981). Ultimately the Court determined that the vehicle could not have *evidence of the crime of arrest* as the driver was arrested for *driving on a suspended license*, thus

the search in that particular instance was not justified as a valid search incident to arrest.

**{¶63}** In reaching its conclusion, the Supreme Court of the United States analyzed its prior decisions in *Chimel* and *Belton*. In *Chimel*, the Supreme Court of the United States limited the scope of a warrantless search incident to arrest to the arrestee's person and the area within his or her "immediate control." 395 U.S. at 763. *Belton* addressed what the concept of "immediate control" meant in the context of a *vehicle*, which *Chimel* did not address. *Belton* concluded that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or an evidentiary ite[m].'" 453 U.S. at 460.

**{¶64}** In *Gant*, the Supreme Court of the United States noted that *Belton* was "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there [wa]s no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant* at 341. The Court indicated that some lower courts had misinterpreted *Belton* to allow searches of vehicles incident to *every* arrest. *Id*. at 342-43. The *Gant* decision sought to clarify *Belton*'s holding by tying a lawful search of a vehicle to the offense of arrest.

**{¶65}** *Gant*'s holding thus set the current standard for searching a vehicle incident to arrest as follows. "Police may search the passenger compartment of a

vehicle incident to a recent occupant's arrest *only if it is reasonable to believe* that [1] the arrestee might access the vehicle at the time of the search *or* [2] *that the vehicle contains evidence of the offense of arrest.*" (Emphasis added). *Gant* at syllabus.

{¶66} To an extent, the *Gant* Court clarified its new holding regarding a search of an automobile incident to arrest by emphasizing that the *nature of the arrested offense* would be determinative in some cases as to whether an officer had a reasonable belief that the vehicle contained evidence of the offense of arrest. "In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." (Emphasis added.) *Gant* at 343-44, citing *Atwater v. Lago Vista*, 532 U.S. 318, 324, 121 S.Ct. 1536 (2001); *Knowles v. Iowa*, 525 U.S. 113, 118, 119 S.Ct. 484 (1998). This was reinforced by the *Gant* decision itself, which found that driving on a suspended license would not give officers authority to conduct a search incident to arrest. However, *Gant* held that in other cases, "*the offense of arrest will supply a basis* for searching the passenger compartment of an arrestee's vehicle and any containers therein." (Emphasis added.) *Gant* at 344. In making this statement, the Court cited two notable drug cases, *Belton* and *Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127 (2004), though neither was an OVI/DUI/DWI. *See Belton*, 453 U.S. 454 (search of vehicle was lawful where defendants arrested for "unlawful possession

of marijuana") and *Thornton*, 541 U.S. 615, 618 (search of defendant's vehicle was lawful where defendant was arrested after police officer discovered "three bags of marijuana" and "a large amount of crack cocaine" on his person.).

{¶67} Some courts across the United States[5] have understood *Gant*'s language that the offense of arrest will "supply" a basis for the search of an automobile as creating a "categorical link" between the nature of the crime of arrest and the right of an officer to search a vehicle incident to that arrest.[6] *Idaho v. Cantrell*, 149 Idaho 247, 233 P.3d 178 (2010); *California v. Nottoli*, 199 Cal.App.4th 531, 130 Cal.Rptr.3d 884 (2011). Courts that adhere to this line of reasoning have found that an OVI—or a comparable DUI/DWI statute—*supplies* the reason for a search incident to arrest under *Gant*, and thus such a search is lawful. *Idaho v. Cantrell*, 149 Idaho 247, 254 (2010) ("In this case, Cantrell was arrested for DUI, and the DUI supplied the basis for the search. * * * It was reasonable to believe that evidence of the offense, e.g. alcohol containers or other evidence of alcohol use, 'might be found in the vehicle.'"); *U.S. v. Martinez*, 9th Cir. No. 10-30015, 2010 WL 4386832, 403 Fed.Appx. 182, 183-84 ("The court below found

---

[5] Although at the time of this writing over 100 cases from Ohio courts cite *Gant*, no cases address the specific issue before this Court regarding a search incident to an OVI arrest, and thus the majority opinion and I both look to other jurisdictions for persuasive authority as to how *Gant* should be interpreted.

[6] Although not applying the "categorical link" approach, this approach was recognized as existing by *State v. Ewertz*, 49 Kan.App.2d 8, 305 P.3d 23 (2013), and *Taylor v. Maryland*, 448 Md. 242, 137 A.3d 1029 (2016). The Sixth Circuit Court of Appeals also recognized the existence of the categorical approach, and the application of courts "consistently [holding] that an officer who arrests a driver for operating under the influence has a reasonable belief that there will be evidence of operating under the influence in the car." *Thomas v. Plummer*, 6th Cir. No. 11-3165, 11-3181, 2012 WL 2897007, 489 Fed.App'x 116, 121. However, the Sixth Circuit did not adopt either approach in the *Thomas* case, as it was not necessary for its decision.

that Luedtke properly searched Martinez's vehicle after arresting him for driving under the influence of drugs.  Because Luedtke was searching for evidence of drug use, it is clear that he was searching for 'evidence relevant to the crime of arrest.' "); *California v. Nottoli*, 199 Cal.App.4th 531,554 (2011) ("We conclude that the search of the Acura incident to Reid's arrest for being under the influence was lawful under *Gant* based on the nature of that offense."); *U.S. v. Oliva*, S.D. Texas No. C-09-341, 2009 WL 1918458 (July 1, 2009) ("It would be reasonable for officers to search the vehicle for evidence of driving while intoxicated, including open or empty containers."); *Cain v. Arkansas*, 2010 Ark.App. 30, 373 S.W.3d 392, 397 (2010) ("Since intoxication includes the use of controlled substances, the officers acted reasonably by searching those areas within appellant's reach as he sat in his car in a deserted parking lot.  The discovery of marijuana and methamphetamine constituted evidence that he was using controlled substances[.]"); *Heath v. Commonwealth of Kentucky*, Ky.App. No. 2011-CA-000515-MR, 2014 WL 891264 ("Here, Trooper McPherson was not 'rummag[ing] at will[,]' * * * [h]e conducted a focused search[] for evidence of Heath being an impaired driver which is permissible under *Gant*."); *Louisiana v. Cook*, 83 So.3d 1259 (La.App.2012) ("The observed impairment of the driver * * * while clearly involving alcohol, raises the considerable possibility for the involvement of other drugs used by the defendant. It is therefore reasonable to believe that evidence of the crime of arrest * * * would

be located in the vehicle being unlawfully operated by the arrestee and in her purse.").[7]

{¶68} These courts would seemingly find that an OVI—or DUI/DWI—is inherently different than the type of offense in *Gant*, driving with a suspended license, which was a routine traffic offense. In the case of an OVI, the preceding cases reason that an officer is searching for "evidence related to defendant's arrest for driving while intoxicated," whereas in the case of a routine traffic case, such as driving with a suspended license or speeding, nothing in the vehicle would constitute evidence of the offense. *Oliva*, *supra*.

{¶69} Other courts have not applied a "categorical" approach under *Gant* in OVI/DUI/DWI situations, electing not to focus on the language in *Gant* that some offenses will "supply a basis" for a search incident to arrest, focusing exclusively on *Gant*'s language that it be "*reasonable to believe * * * that the vehicle contains evidence of the offense of arrest.*" *See Taylor v. Maryland*, 448 Md. 242, 137 A.3d 1029 (2016). These courts have likened *Gant*'s "reasonable to believe" language to the "reasonable suspicion" standard, and thus these courts would determine that if an officer has a reasonable articulable suspicion that the vehicle may contain

---

[7] *Cook* notes that the defendant was placed "under arrest for driving while intoxicated after the officer smelled alcohol and conducted a field sobriety test on the defendant." 83 So.3d at 1260. Where the officer smelled alcohol is not clarified. If the smell of alcohol was coming from the vehicle, it would provide an additional fact not present in this case, though *Cook* would still seem to hold that the offense itself provided reason to search incident to arrest.

evidence of the offense of arrest, the officer can search the vehicle incident to that arrest. *Taylor v. Maryland*, 448 Md. 242, 250-51 (2016); *United States v. Taylor*, D.C. App. No. 12-CO-5, 49 A.3d 818, 824 (2012).

**{¶70}** Notably, the reasonable suspicion standard "requires only that it be reasonable to believe that evidence '*might*' be found, a level of certainty comparable to that required for *Terry* stops." (Emphasis sic.) *United States v. Taylor*, *supra*, 49 A.3d 818, 824, citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968). It is a lesser standard than probable cause and " 'considerably less than a preponderance of the evidence,' " but still " 'more than a mere 'hunch' or 'gut feeling[.]' ' " *Taylor* at 824, quoting *Pinkey v. United States*, 851 A.2d 479, 493 (D.C.2004) (additional citation omitted), *Bennett v. United States*, 26 A.3d 745, 751 (D.C.2011) (additional citation omitted).

**{¶71}** In this case, if we were to apply the categorical approach under *Gant* that some courts have, our analysis would end with the fact that an OVI is a crime for which evidence might be discovered in the vehicle, unlike driving with a suspended license, and thus the search would be valid. Stated another way, rather than arbitrarily severing phrases within the language of the *Gant* standard, it seems more likely that in any unified reading of *Gant*, the "categorical" approach is simply saying that in certain offenses for which evidence of the arrest could be present, such as OVI, it is inherently "reasonable to believe" that such evidence is present in

the vehicle. *See Idaho v. Cantrell*, 149 Idaho 247, 254; s*ee also State v. Grubb*, 3d Dist. Defiance No. 4-9-32, 2010-Ohio-1265 (wherein this Court found that pursuant to *Gant* a search incident to arrest for *driving under suspension* was unlawful as the vehicle could not have evidence of *that* offense to justify a search.)

**{¶72}** On the other hand, if we were to solely rely upon the "reasonable to believe" language of *Gant*, we would look at the totality of the circumstances and determine if the officer had a specific reasonable articulable suspicion in addition to the mere nature of the offense, to justify the search of a vehicle incident to arrest. Thus for example, the highest Court in Maryland, has found that an officer's knowledge and experience of finding evidence related to an OVI (DUI) in a passenger compartment of a vehicle could lead to a reasonable articulable suspicion justifying a search if a vehicle incident to arrest. *Taylor v. Maryland*, 448 Md. 242, 250-251 (2016).

**{¶73}** However, at least two federal courts have interpreted the "reasonable to believe" language of *Gant* to require additional specific, articulable facts in addition to the basis of the arrest before a search of an automobile incident to arrest would be justified. In *United States v. Taylor*, 49 A.3d 818 (2012), the D.C. Court of Appeals affirmed the suppression of evidence where a defendant was arrested for OVI and his vehicle was searched incident to that OVI arrest. The *Taylor* court determined that officers lacked a particularized reason to believe that the defendant

had alcohol specifically in the car given that it was *possible* that the defendant had become intoxicated elsewhere. The *Taylor* court essentially determined that an officer's supposition that vehicles sometimes contain alcohol or narcotics when the driver is arrested for OVI was insufficient to justify a search of a vehicle incident to arrest under *Gant*. *United States v. Taylor*, 49 A.3d 818, 827-828.

**{¶74}** In *United States v. Reagan*, E.D. Tenn. No. 3:10-PO-22, 713 F.Supp.2d 724 (2010), the Eastern District of Tennessee similarly found that there must be a "particularized and articulable reason to believe that evidence of DUI is contained inside" the searched vehicle before a search incident to arrest is permitted under *Gant*. *Reagan* at 733. The Eastern District of Tennessee found that an officer's testimony that alcohol was occasionally found in vehicles following the arrest of drivers who were driving under the influence was not particularized enough to justify a search of a vehicle incident to arrest. *Id.*

**{¶75}** *Taylor* and *Reagan* would thus require particularized and articulable reasons beyond the driver's intoxication or arrest for an OVI offense, and seemingly beyond an officer's experience finding alcohol or narcotics in a vehicle when a driver is arrested for OVI, in order to justify the search of a vehicle incident to an OVI arrest. These courts seem to be placing an additional requirement on *Gant* that does not exist in its text, namely that there must be an additional step beyond the nature of the offense, even when the nature of the offense is not a traffic offense,

and further, an additional step beyond the officer's experience finding alcohol or narcotics in a vehicle incident to an OVI arrest. *See California v. Nottoli*, 199 Cal.App.4th 531, 553 ("Although these federal district courts were focused on the particularized facts, nothing in *Gant* suggests that the Supreme Court was adoption a fact-intensive test similar to the reasonable suspicion standard established by *Terry v. Ohio*[.]"); *Brown v. Florida*, Fl.App. No. 5D08-3196, 24 So.3d 671 ("It is clear * * * that the 'nature of the charge' is determinative of whether there exists a reasonable basis to search for evidence, not whether there is some independent evidence that gives rise to a belief that the particular vehicle contains evidence.").

{¶76} Notably, the "additional step" or additional evidence that the *Taylor* and *Reagan* courts would require before permitting a lawful "search incident to arrest" for OVI could often supply its own, independent basis for a search of a vehicle, which would seem to undermine the necessity for a search incident to arrest altogether. For example, requiring an officer to state that he saw an open container in a vehicle or that he smelled burnt marijuana in a vehicle would almost undoubtedly be particularized to the vehicle under *Taylor* and *Reagan* (at least much more so than an officer's general experience), but those facts *alone*, separate from any OVI arrest and the facts leading to that OVI arrest, would justify searching a vehicle under the *higher* standard of probable cause. *State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10 ("The smell of marijuana, alone, by a person qualified to

recognize the odor, is sufficient to establish probable cause to conduct a search.");
*State v. Laird*, 9th Dist. Medina No. 3213-M, 2002-Ohio-311 ("Having an open
container of an alcoholic beverage * * * [provides] probable cause to search the
interior of the vehicle for additional open containers.").

{¶77} Thus, requiring an officer to have some additional fact beyond all of
the reasons that led the officer to arrest an individual for OVI and beyond the
officer's experience finding alcohol or narcotics in a vehicle when arresting a driver
for OVI, seems counter-intuitive given the *lower* "reasonable to believe" standard
announced in *Gant*, if that standard was applied in lieu of a categorical approach.
*Taylor* and *Reagan* seem to ignore the "reasonable to believe" standard, which
would only require that evidence "might" be found in the vehicle.

{¶78} The preceding caselaw indicates that *Gant*'s language has not been
consistently applied. At its broadest, courts find that *Gant* allows a search of a
vehicle incident to *all* OVI arrests because the OVI "categorically" supplies the
basis for the search. Other courts would find that as long as an officer has
experience finding alcohol or narcotics in conjunction with OVI arrests, the search
would be justified since all that is required is that the officer "might" find contraband
in the vehicle. Reading *Gant* the most narrowly, as the majority in this case does,
an officer would need a specific, particularized reason as to why he or she believes

alcohol or narcotics were *in the vehicle* in order to search it incident to an OVI arrest, separate from the driver's intoxication and the officer's experience.

**{¶79}** In addressing the disparate legal decisions and applying them to the facts before us, I believe that the greater weight of authority and reason supports the conclusion that under *Gant*, the OVI either supplies the basis for a search of a vehicle incident to arrest or would be a factor to consider in establishing a reasonable suspicion along with the officer's experience, which would then support a search of a vehicle incident to arrest. Regardless of which standard is applied in this case, I would find that the search here was justified.

**{¶80}** In this case, Officer Wehage testified as to the reasons he arrested Eversole for OVI. That testimony included Eversole's driving as observed by Officer Wehage and the person who called about Eversole's driving, Eversole's failure to notice a car that had to swerve to avoid her, her droopy eyes, her slow, lethargic movements, her lack of pupil response to light, her slow body clock and her failure on various sobriety tests.[8] Officer Wehage also testified that he had experience with OVIs and that he had reason to believe based on his experience that Eversole's vehicle would contain contraband.[9] (November 29, 2016, Tr. at 34). Officer Wehage testified that opiates could easily be in a pill bottle or something

---

[8] Eversole does not even dispute on appeal that Officer Wehage had probable cause to arrest her for OVI.
[9] Admittedly this testimony was elicited primarily through leading questioning on re-direct; however, no objection was made.

similar concealed in Eversole's vehicle. Officer Wehage testified that unlike marijuana or alcohol, opiates could be in some "odorless" form, "which could be concealed very easily inside the vehicle and not be in plain view." (*Id*. at 35). The trial court specifically found that Officer Wehage's testimony was uncontroverted and it also found the officer "truthful." I would find that this testimony leading to the OVI arrest both "supplies the basis" for the search in this case and supports a reason to believe that the vehicle might contain evidence of the arrested offense.

{¶81} Contrary to the construction of the majority, the *Gant* decision was intended to prevent officers from searching a vehicle incident to arrest where the search "categorically" had *no connection* to the offense. Routine traffic offenses such as driving on a suspended license are unlikely to supply a basis to search a vehicle incident to arrest because, as *Gant* stated, the vehicle *cannot* have evidence of driving on a suspended license.[10] In the case of an OVI, alcohol or narcotics located in the vehicle could constitute evidence that could be used to circumstantially prove the OVI offense. *See Idaho v. Cantrell* at 254.

{¶82} Finally, I would note that the mere "possibility" that an OVI defendant might have ingested the alcohol or opiate before getting into the vehicle, relied upon in the reasoning of the majority, perhaps based upon federal case law, in my view,

---

[10] At least one court has interpreted *Gant* as meaning to classify only minor traffic violations, things such as driving without a seatbelt fastened, failing to secure passenger children in seatbelts, driving without a license, failing to provide proof of insurance, speeding, and driving with a suspended license. *United States v. Reagan*, 713 F.Supp.2d 724, citing the relevant interpretation from *Florida v. Brown*, 24 So.3d at 681-82.

constitutes an exceptionally weak basis upon which to require an officer to disregard all of the foregoing factors indicating reasonable suspicion that evidence of OVI *might* be in the vehicle. Indeed, I can think of no area in the criminal law where the mere possibility of an alternative set of facts would outweigh the legitimate facts establishing a reasonable suspicion.

**{¶83}** For all of these reasons, I would overrule Eversole's assignment of error and affirm the trial court's judgment. Thus I respectfully dissent.

**/jlr**